The State of Ohio, Appellant, *v.* Heston, Appellee.

(No. 71-533—Decided March 8, 1972.)

154

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Robert S. Stone,* for appellant.

*Mr. Harry E. Youtt,* for appellee.

CORRIGAN, J. The central issue in this appeal by the state is whether the handwriting exemplar was the product of an invalid arrest and thus inadmissible. Related issues raised by defendant in the Court of Appeals are whether the exemplar was coerced, whether its admission in evidence violated defendant's Fifth Amendment priv-

ilege against self-incrimination, and whether in the circumstances presented a warrant should have been obtained.

As to the latter issue, whether a warrant should have been obtained, in *State* v. *Woodards* (1966), 6 Ohio St. 2d 14, 20, this court stated that:

"Under certain circumstances, a warrant need not be obtained in order to render an arrest valid. The arresting officer must have probable cause to believe that a felony was committed by defendant, and the circumstances must be such as to make it impracticable to secure a warrant. *Johnson* v. *United States*, 333 U. S. 10; *Jones* v. *United States*, 357 U. S. 493, 499, 500; *Chapman* v. *United States*, 365 U. S. 610, 615."

The circumstances surrounding the warrantless arrest here are that when the police left the police station they had information from the informer that defendant and the others intended to leave town and at the time defendant was arrested this information had been buttressed by discovery of the fact that one of defendant's alleged accomplices had already fled.

We are of the opinion that in such circumstances the police were justified in proceeding without a warrant. The holding in *Coolidge* v. *New Hampshire* (1971), 403 U. S. 443, 29 L. Ed. 2d 564, 593, "that the police must obtain a warrant when they intend to seize an object outside the scope of a valid search incident to arrest," is not helpful to defendant. Although, in the opinion in that case, there is some discussion concerning whether entry into a person's house without a warrant for purposes of arrest is permissible in the absence of exigent circumstances, the court found it unnecessary to pass upon that question.

We turn now to the principal issue: Was there probable cause for the warrantless arrest?

Whether a warrantless arrest is " * * * constitutionally valid depends * * * upon whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances

within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the * * * [defendant] had committed or was committing an offense." *Beck* v. *Ohio* (1964), 379 U. S. 89, 91.

In its reversal of defendant's conviction here the Court of Appeals relied upon *Aguilar* v. *Texas* (1964), 378 U. S. 108. In that case, the Supreme Court of the United States held that an affidavit reciting that police had "received reliable information from a credible person" that narcotics were being kept for sale at specified premises "did not provide a sufficient basis for a finding of probable cause" to support issuance of a search warrant.

The holding in *Aguilar* was characterized in *Spinelli* v. *United States* (1969), 393 U. S. 410, 413, as being two-pronged, *i. e.,* the application for a search warrant must set forth (1) the underlying circumstances necessary to judge the validity of the informant's conclusions and (2) facts supporting the claim that the informant was " 'credible' or his information 'reliable.' "

In *Spinelli,* the court cited *Draper* v. *United States* (1959), 358 U. S. 307, as being a case where the facts supplied by an informer were sufficient to support a finding of probable cause. In footnote 5, on page 417, the court made the following observation:

"While *Draper* involved the question whether the police had probable cause for an arrest without a warrant, the analysis required for an answer to this question is basically similar to that demanded of a magistrate when he considers whether a search warrant should issue."

Concerning *Draper,* the court said:

"The detail provided by the informant in *Draper* v. *United States,* 358 U. S. 307 (1959), provides a suitable benchmark. While Hereford, the government's informer in that case, did not state the way in which he had obtained his information, he reported that Draper had gone to Chicago the day before by train and that he would return to Denver by train with three ounces of heroin on one of

two specified mornings. Moreover, Hereford went on to describe, with minute particularity, the clothes that Draper would be wearing upon his arrival at the Denver station. A magistrate, when confronted with such detail, could reasonably infer that the informant had gained his information in a reliable way. * * *

"* * * Independent police work in that case [*Draper*] corroborated much more than one small detail that had been provided by the informant. There, the police, upon meeting the inbound Denver train on the second morning specified by informer Hereford, saw a man whose dress corresponded precisely to Hereford's detailed description. It was then apparent that the informant had not been fabricating his report out of whole cloth; since the report was of the sort which in common experience may be recognized as having been obtained in a reliable way, it was perfectly clear that probable cause had been established."

We are of the opinion that this case falls within the ambit of *Draper*. Here, as there, independent police work "corroborated much more than one small detail that had been provided by the informant." Police knowledge of theft of the checkwriter and checks from the Alcraft Company, that some of those checks had been passed in the vicinity of defendant's residence and that defendant was charged in Bedford with burglary and theft of the I. B. M. machines served to establish the trustworthiness of the informer's tip and provided police with a firmer foundation than "suspicion," "belief" or "mere conclusion" upon which to base probable cause for defendant's arrest. When this information, independently obtained by police investigation, came to light it was "then apparent that the informant had not been fabricating his report out of whole cloth," and it "was perfectly clear that probable cause had been established."

Inasmuch as we have determined that there was probable cause for defendant's arrest without a warrant, defendant's argument that the exemplar was the product of an illegal arrest is without merit. *Davis* v. *Mississippi*

(1969), 394 U. S. 721, which held that fingerprint evidence resulting from an arrest without a warrant or probable cause for arrest to be the product of unlawful detention, is inapposite in light of our determination that the detention here was not unlawful.

Defendant's assertion that the admission in evidence of his handwriting exemplar constituted a denial of the Fifth Amendment privilege against self-incrimination is also baseless. *Gilbert* v. *California* (1967), 388 U. S. 263, 266, holds that:

"* * * A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside its [Fifth Amendment privilege] protection."

Nor do we find any merit to defendant's claim that the exemplar was coerced. Defendant was being detained lawfully and was told when released that he might be rearrested. This falls short of either threats or promises which might support a claim of duress.

The judgment of the Court of Appeals is reversed and the judgment of the Court of Common Pleas is affirmed.

*Judgment reversed.*

O'NEILL, C. J., SCHNEIDER, HERBERT, STERN, LEACH and BROWN, JJ., concur.