## CITY OF TOLEDO

### v.

### PENN.

Toledo Municipal Court,
Lucas County, Ohio.

No. TRC–99–46944.

Decided April 10, 2000.

*Sharon Gaich,* Assistant City Prosecutor, for the city.

*Stephen J. Steinberg,* of the Lucas County Public Defender, for defendant.

---

THOMAS J. OSOWIK, Judge.

This matter came before the court on the defendant's motion to suppress. A hearing was held and testimony taken.

The court finds that at approximately 11:20 p.m. on December 11, 1999, Toledo police were dispatched to the Krieger Pub on Laskey Road in Toledo. The officers were dispatched pursuant to a call from the establishment that an intoxicated woman had had her purse stolen with $3,000 in cash contained within it.

Upon arriving at the parking lot of the pub, the officers noticed a grey Ford Crown Victoria backing out from a parking spot on the premises. The officers observed the vehicle then reverse direction, drive back into the same parking spot, turn off the lights, turn off the ignition, and remain stationary.

The officers considered this behavior to be suspicious in light of the reason why the police had been dispatched to the scene. The officers stopped their vehicle and approached the Ford Crown Victoria. The defendant, Tracy Leah Penn, seated in the passenger side, opened her door, and the officers observed a strong odor of intoxicants. The defendant's eyes were glassy and bloodshot, her speech was slowed, and she appeared to be extremely intoxicated. When questioned, both the defendant and the male driver denied that either of them reported a purse stolen.

Both occupants, after exiting the vehicle and concluding their interview with the police, began walking away from the pub.

Shortly thereafter, the police crew at the scene was dispatched to another disturbance near Alexis and Teatherwood Roads. As the officers were leaving, the defendant was observed standing against a brick wall of a used car parking lot across the street.

Within minutes of responding to the Alexis Road disturbance, the officers were again dispatched back to the Krieger Pub on a report of a disturbance at the pub involving a man. In the course of responding to that call, while in the 5800 block

of Rowland Road, the officers observed the same grey Ford Crown Victoria in the middle of the front yard of a residence. The defendant was seen by the officers stepping out of the driver's side of the vehicle. The officers did not observe any traffic violations committed by the defendant.

Having observed the defendant previously, the officers stopped their patrol vehicle and approached the defendant.

The officers had the defendant perform several field sobriety tests. When asked to recite the alphabet, the defendant correctly recited the alphabet up to the letter "n" and then concluded with "and all the rest."

When asked to walk a straight line, the defendant could hardly stand.

When performing the gaze nystagmus test, the defendant's eyes could not follow the officer's pen.

Based upon the prior observations of the defendant and the defendant's performance on the field sobriety tests, the officers charged the defendant with a violation of Toledo Municipal Code Section 333.01(a)(1), operating a motor vehicle while under the influence of alcohol.

Defendant asserts that the traffic stop of her vehicle was unreasonable, because, at the time the officers effected the stop, they did not have a reasonable, articulable suspicion of illegal activity.

█ Both the Ohio and United States Constitutions protect individuals from unreasonable searches and seizures. Fourth Amendment to the United States Constitution; Section 14, Article I, Ohio Constitution. However, an officer may reasonably conduct an investigatory stop if he or she can "point to specific and articulable facts which, taken together with rational inferences from those facts," reasonably warrant the stop. *Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906; *Delaware v. Prouse* (1979), 440 U.S. 648, 655, 99 S.Ct. 1391, 1397, 59 L.Ed.2d 660, 668–669. The determination of whether a stop is warranted depends on whether, considering the totality of the circumstances, the officer had an objective and particularized suspicion that "criminal activity was afoot." *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271, 1273.

The totality of the circumstances must be viewed "through the eyes of the reasonable and prudent police officer on the scene who must react to the events as they unfold." *State v. Andrews*, 57 Ohio St.3d at 87–88, 565 N.E.2d at 1273.

█ The policy behind limiting the scope and duration of investigative stops is to prevent them from supporting a "fishing expedition" for evidence of crime. See *State v. Gonyou* (1995), 108 Ohio App.3d 369, 372, 670 N.E.2d 1040, 1041.

Depending on the facts of each individual case, certain police activities have been deemed to be manipulative practices that were found to be beyond the scope and purpose for which the initial stop was made.

It is important to note that the evidence in the case before the court establishes that the defendant's vehicle was, in fact, stopped when the officers observed the vehicle on the lawn. Therefore, the question before the court is whether the officers had a reasonable and articulable suspicion that the defendant was operating a motor vehicle while under the influence of alcohol and not whether the stop was constitutionally valid.

■ To justify a warrantless, investigatory restraint of an individual, an officer must have a reasonable suspicion that the person is engaged in illicit activity. *Terry v. Ohio*, 392 U.S. at 19–20, 88 S.Ct. at 1878–1879, 20 L.Ed.2d at 904–905.

In the initial encounter with the defendant at the Krieger Pub, the police were dispatched pursuant to a report from the pub that an extremely intoxicated woman had reported her purse stolen with $3,000 cash contained within it.

■ In order to effectuate a *Terry* stop, the police need not witness the suspect actually engaged in criminal activity. Otherwise, there would be probable cause to arrest. Rather, it is sufficient that the police witness the suspect engaged in activity that, although not illegal in itself, is sufficient to give rise to a reasonable suspicion that the suspect is engaged in criminal activity.

■■ A *Terry* stop is investigatory. It requires only that the police have "reasonable suspicion" that criminal activity is afoot. "Reasonable suspicion" is a term of art, not readily definable, that contemplates something less than probable cause and yet more than a subjective hunch. *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909. Activity that merely piques the curiosity of a police officer will not suffice. However, conduct that is not illegal by itself may, under the circumstances, give rise to a reasonable suspicion.

It is entirely possible, therefore, that conduct that is perfectly legal may nonetheless justify a reasonable suspicion that criminal activity is afoot. The conduct need only be unusual, not criminal. "The protection against the police acting out of curiosity, or on an 'unparticularized suspicion' or 'hunch,' is that the police officer must be able to point to specific and articulable facts that, in light of his or her experience, support 'specific reasonable inferences' of criminal activity." *State v. Marsh* (Sept. 3, 1999), Hamilton App. Nos. C–980788 and C–980789, unreported, 1999 WL 682622.

■ Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish

probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. *Alabama v. White* (1990), 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301, 309.

When stopping a motorist based upon a reasonable suspicion, an officer is permitted to "ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Berkemer v. McCarty* (1984), 468 U.S. 420, 439, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317, 334.

"The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Ornelas v. United States* (1996), 517 U.S. 690, 696, 116 S.Ct. 1657, 1661–1662, 134 L.Ed.2d 911, 919.

In the case before the court, at the time of the initial encounter with the defendant, suspicion by the officers was based upon her physical proximity to the pub and the movement of the vehicle in the manner described immediately after they pulled up in his police cruiser.

Thus, in the present case, the record shows that the initial stop of the defendant was a factually, constitutionally, and statutorily permissible stop.

Moving on to the ultimate issue of whether probable cause existed to effect the arrest of the defendant for driving under the influence of alcohol, the court must determine "whether the facts and circumstances within the [officers'] knowledge were sufficient to cause a prudent person to believe the suspected violator had committed the offense." *State v. St. John* (Mar. 28, 1995), Holmes App. Nos. 520 and 521, unreported, 1995 WL 434234, at * 1, citing *State v. Heston* (1972), 29 Ohio St.2d 152, 58 O.O.2d 349, 280 N.E.2d 376, and *Beck v. Ohio* (1964), 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142.

The Supreme Court of Ohio has established three guidelines for evaluating driving-under-the-influence arrests when a police officer has not observed the accused driving. First, " 'each "drunken driving" case is to be decided on its own particular and peculiar facts.' " *Oregon v. Szakovits* (1972), 32 Ohio St.2d 271, 273, 61 O.O.2d 496, 497, 291 N.E.2d 742, 744, quoting *Mentor v. Giordano* (1967), 9 Ohio St.2d 140, 146, 38 O.O.2d 366, 370, 224 N.E.2d 343, 348. See, also, *Xenia v. Manker* (1984), 18 Ohio App.3d 9, 12, 18 OBR 33, 36, 480 N.E.2d 94, 97. Second, " '[c]hronology is an important element in 'drunken driving' cases. A relationship must be established between the time there was evidence to show the influence of intoxicants and the time of operating a vehicle.' " *Oregon* quoting

*Mentor.* The third test is that " 'the evidence must show beyond a reasonable doubt that the accused was under the influence of intoxicating liquor while operating the vehicle * * *.' " *Id.*

In the instant case, the time of the incident and the position of the defendant's vehicle in the center of the lawn suggested that something was wrong with either the occupants of the vehicle or the vehicle itself. The officers also recognized the same vehicle and the defendant from the prior encounter. The officers also observed the defendant exit the vehicle from the driver's side door. Thus, the officers' approach of the defendant's vehicle was justified.

Under the totality of the circumstances, the officers' approach of the defendant's vehicle satisfied the reasonable suspicion standard.

Thereafter, the law enforcement officers ascertained additional facts that escalated the reasonable suspicion into probable cause to arrest the defendant. The recognition of the smell of alcohol, takin in conjunction with their prior observation of the defendant and the position of the defendant's vehicle in the middle of the lawn, was sufficient to support the officers' further inquiry into whether the defendant was under the influence of alcohol. The officers' observation of the instability in the defendant's ability to stand, their discernment of the smell of alcohol about the defendant's person, and the results of the sobriety tests, taken in conjunction with the aforementioned facts, all supported the existence of probable cause for the defendant's arrest.

Based upon these findings of fact and conclusions of law by the court, the defendant's motion to suppress is found not well taken and denied.

It is further ordered that this matter be referred to the Office of the Assignment Commissioner for assignment of a trial date.

*Motion denied.*