DECISION.
In a single assignment of error, the city of Cincinnati appeals from the judgment of the trial court granting defendant-appellee Matthew Jacobs's motion to suppress evidence. We sustain the assignment of error and reverse the trial court's judgment.
On August 9, 2000, at approximately 3:30 a.m., Cincinnati Police Officer James Perkins was on patrol in his cruiser when he saw Jacobs's car parked on the south side of Court Street, with its motor running and its lights on. Officer Perkins saw Jacobs's silhouette inside the car, making "furtive movements. The officer said that Jacobs's head was down, and that he was "making movements as if he was [sic] masturbating inside of his vehicle." Because the police had earlier received several vice complaints that sexual activity was going on in the area, the officer quickly drove up to Jacobs's car.
Officer Perkins pulled alongside the car's driver's side and exited from his cruiser. As he crossed in front of his cruiser and approached Jacobs's driver's door, Jacobs immediately put his car into gear and drove off, forcing Officer Perkins to step back to get out of its way. At the time, Officer Perkins was dressed in full police uniform. The officer testified that, just before Jacobs drove off, Jacobs had looked directly at him.
Officer Perkins yelled for Jacobs to stop and ran back to his police cruiser. As Officer Perkins began to follow Jacobs's car, Jacobs "was still making all sorts of movements in the car," as his hands were down near the seat. Officer Perkins indicated that he was concerned by Jacobs's actions because Jacobs could have been hiding a weapon or pulling up his pants.
As Jacobs began to turn southbound onto Sycamore Street, Officer Perkins activated his cruiser's overhead lights to initiate a traffic stop of Jacobs's car. Jacobs made an abrupt stop, with the front end of his car facing into the southbound Sycamore Street traffic, in a lane of travel. Jacobs's stop was so abrupt that Officer Perkins nearly struck his car from the rear.
Officer Perkins got out of his cruiser and approached Jacobs's car. Jacobs's window was halfway down. Jacobs immediately asked the officer what reasonable, articulable suspicion he had to stop him. When Officer Perkins asked for his driver's license, Jacobs removed his wallet and began to fumble around in it. Jacobs then pulled out his attorney card and handed it to the officer. Officer Perkins asked again for Jacobs's license. Jacobs fumbled around for it again and presented it to the officer. Officer Perkins explained that he had stopped Jacobs because he had left the curb without using a turn signal, and because there was vice activity going on in the area.
At the time, Officer Perkins noticed a slight to moderate smell of alcohol emanating from Jacobs's breath, and that Jacobs's eyes were bloodshot and glassy. Also, he noticed that Jacobs slurred and stuttered when he spoke. Officer Perkins testified that Jacobs "was running his words together. I don't think it was mild. I think it was more than mild." Jacobs told Officer Perkins that he had had nothing to drink that night.
At that point, Officer Perkins asked Jacobs to get out of his car for field sobriety testing. On the alphabet test, Jacobs stated the alphabet so fast, slurring the letters together, that the officer could not understand him. When the officer asked Jacobs to recite the alphabet a second time, Jacobs "went from A to W. And then he hestitated on W for about thirty seconds. I nodded my head and then he finished."
As Officer Perkins was giving instructions to Jacobs for the performance of the one-leg-stand test, Jacobs "stood and swayed to the point where I moved just in case he fell." On the finger-to-nose test, Officer Perkins testified that Jacobs correctly touched the tip of his nose, but "he wouldn't release it. He started early and didn't follow directions. And I explained it three times to touch and release. And then he would not cooperate by talking." Officer Perkins explained that he was unable to give Jacobs instructions, because Jacobs would interrupt, not allowing the officer to finish the instructions. On the walk-and-turn test, Officer Perkins testified that, on various steps, Jacobs tripped or stumbled or raised his hands.
Officer Perkins told Jacobs to sit in his car, and he called Officer Joey Stevens for the administration of the horizontal gaze nystagmus (HGN) test. Upon his arrival, Officer Stevens noticed that Jacobs's eyes were red and bloodshot, and that a very mild odor of alcohol was coming from him. Officer Stevens further testified that he noticed a minty smell about Jacobs, "such as mouthwash." Officer Stevens conducted an HGN test on Jacobs.
Jacobs was charged with operating a motor vehicle while under the influence of alcohol, in violation of R.C. 4511.19(A)(1), and operating a motor vehicle with a prohibited alcohol concentration, in violation of R.C. 4511.19(A)(4), as well as with leaving a curb without using a proper signal, in violation of Cincinnati Municipal Code 506-25.
Jacobs filed a motion to suppress evidence. After a hearing, the trial court found that the police officers lacked probable cause to arrest because the field sobriety tests were not administered in strict compliance with standardized testing procedures, as required by State v.Homan (2000), 89 Ohio St.3d 421, 732 N.E.2d 952. On appeal, the city argues that the trial court's determination concerning probable cause was in error. We agree.
The test for establishing probable cause to arrest without a warrant is whether the facts and circumstances within an officer's knowledge are sufficient to warrant a prudent person in believing that the defendant is committing or has committed an offense.[1] Review of the trial court's findings of fact and conclusions of law entails a two-step inquiry. First, this court must review the trial court's findings of historical fact only for clear error, "giving due weight to inferences drawn from those facts" by the trial court.[2] Next, accepting those properly supported facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. In this case, the de novo determination is "whether [the] historical facts, viewed from the standpoint of an objectively reasonable police officer, amount[ed] to" probable cause.[3]
In State v. Homan, supra, the Supreme Court of Ohio held that while field sobriety tests must be administered in strict compliance with standardized procedures, probable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's poor performance on one or more of these tests. "The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests [have been] administered or where * * * the test results must be excluded for lack of strict compliance."[4]
In Homan, the court held that even though the police officer had not strictly complied with established police procedure when administering the HGN and walk-and-turn tests, the officer's observation of erratic driving; the driver's red and glassy eyes; the smell of alcohol on the driver's breath; and the driver's admission of consumption of alcoholic beverages amply supported the officer's decision to place the driver under arrest.[5] In the present case, we hold that the trial court's determination that Jacobs was arrested without probable cause was contrary to law.[6]
The record demonstrates that Jacobs abruptly pulled away from the curb without properly signaling, causing Officer Perkins to have to step back out of the way. Jacobs had an odor of alcohol emanating from his breath, and he stuttered and slurred when he spoke. Furthermore, Jacobs's eyes were bloodshot and glassy. When asked for his driver's license, Jacobs fumbled around in his wallet and produced his attorney card. When asked for his license a second time, Jacobs fumbled around in his wallet again before producing the license for the officer. Taken together, as a matter of law, these facts and circumstances provided a prudent officer with probable cause to arrest Jacobs for operating a motor vehicle while under the influence of alcohol.[7]
Accordingly, we sustain the city's assignment of error, reverse the judgment of the trial court, and remand this cause for further proceedings consistent with law and this decision.
Judgment reversed and cause remanded.
Doan, P.J., and Hildebrandt, J., concur.
[1] See State v. Heston (1972), 29 Ohio St.2d 152, 155-156,280 N.E.2d 376, 379, citing Beck v. Ohio (1964), 379 U.S. 89, 91,85 S.Ct. 223, 225; Huber v. O'Neill (1981), 66 Ohio St.2d 28,419 N.E.2d 10.
[2] Ornelas v. United States (1996), 517 U.S. 690, 699,116 S.Ct. 1657, 1663; State v. Mills (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972;State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of syllabus.
[3] See Ornelas, supra, at 696, 116 S.Ct. at 1661-1662.
[4] Homan, supra, at 427; 732 N.E.2d at 957.
[5] Id., at 427, 732 N.E.2d at 957-958.
[6] See id.; Cincinnati v. Sims (Oct. 26, 2001), Hamilton App. Nos. C-010178 and C-010179, unreported.
[7] See e.g., Homan, supra; see, also, State v. Sims, supra (evidence of erratic driving, strong odor of alcohol, bloodshot and watery eyes, and admission of alcohol consumption provided probable cause to arrest);State v. Tonne (Sept. 24, 1999), Hamilton App. No. C-980710, unreported (evidence of odor of alcohol, empty beer cans scattered throughout car, red and watery eyes, and swaying while adequately performing field tests provided probable cause to arrest).