OPINION *Page 2 
{¶ 1} Appellant Percell Ross appeals his conviction in the Stark County Court of Common Pleas for one count of possession of cocaine in violation of R.C. 2925.11(A)(C)(4)(b), a felony of the fourth degree, and one count of trafficking in cocaine in violation of R.C.2925.03(A0(2)(C)(4)(c), a felony of the fourth degree. The appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On December 23, 2006, Canton Police Department Sergeant Dittmore and other officers received a call from police dispatchers indicating that a burglary was in progress. The police dispatcher stated that the suspects consisted of several men, one of whom was wearing a brown jacket and had an afro-style haircut. Sergeant Dittmore was in the area and responded to the scene immediately. A few minutes later, Sergeant Dittmore saw three men walking together on an otherwise deserted street. One of the men was wearing a brown jacket and had an afro-style haircut. Sergeant Dittmore, wearing a police uniform but driving an unmarked vehicle, drove up over the curb toward the three men and cut them off. At the same time, a marked police cruiser pulled up behind the three men. Sergeant Dittmore exited his vehicle and identified himself. Two of the three men stayed in place on the sidewalk and were later released without incident. Appellant, however, fled the scene. Sergeant Dittmore began chasing appellant, shouting, "Stop, police." Appellant ran until he reached a large stockade fence. Sergeant Dittmore then tackled appellant, handcuffed him, and turned him over to other police officers. The officers searched appellant and recovered a .22 caliber *Page 3 
round of ammunition and a small amount of crack cocaine. Appellant then indicated to the officers that he wished to speak with Sergeant Dittmore.
 {¶ 3} Sergeant Dittmore approached appellant, who was seated in the back seat of the police cruiser. Appellant told Sergeant Dittmore that he wanted to become a confidential informant, and informed Sergeant Dittmore that he had previously been a confidential informant in three states. Sergeant Dittmore immediately gave appellant a Miranda warning. Sergeant Dittmore took appellant to police headquarters to debrief him.
 {¶ 4} Sergeant Dittmore indicated that the police would not charge appellant with drug abuse and the misdemeanor charge of obstructing official business if appellant was truthful and cooperated with the investigation. [ST. at 28].
 {¶ 5} During the questioning, appellant told Sergeant Dittmore that he possessed a .22 caliber rifle in his home. When Sergeant Dittmore asked appellant about a receipt found on appellant's person that indicated that appellant had purchased ammunition approximately an hour before the police made contact with him, appellant stated that he bought the ammunition for a young boy and no longer had it. Appellant indicated he did not know the boy's name.
 {¶ 6} Because a round of ammunition was found on appellant's person, Sergeant Dittmore asked appellant where his vehicle was located. Appellant said it was parked in a garage not too far away from where the police had picked him up. Sergeant Dittmore asked appellant if the police could search the vehicle to determine whether it contained weapons or narcotics. Appellant assured Sergeant Dittmore that there were no narcotics in the car. [St. at 29]. *Page 4 
 {¶ 7} Appellant and plainclothes police officers drove in an unmarked car to appellant's vehicle. However, appellant's vehicle was not, as appellant had earlier indicated, parked in a garage. [ST. at 31-31]. Instead, it was parked in the back of an apartment building approximately two or three doors down from the location of the attempted burglary. [Id.]. At this point, Sergeant Dittmore concluded that appellant was unreliable and had not been truthful. The police officers searched appellant's vehicle and found two firearms inside the vehicle. [ST. at 16]. The basis for the search was appellant's consent and, alternatively, probable cause to believe there was contraband inside the vehicle. [ST. at 15]. Appellant did not tell the police about the weapons during the questioning, and he exclaimed to the officers at the scene that he believed that the other two men had gotten the weapons out of the vehicle while appellant was at the police station. [ST. at 16].
 {¶ 8} Appellant told Sergeant Dittmore during the questioning at the police station that he had a .22 caliber rifle at home. [ST. at 15]. The police subsequently obtained a search warrant based on appellant's admission that he had a firearm in the house. Pursuant to the search, the police recovered firearms, ammunition of various calibers; and electronic scales. With the exception of the .22 caliber rifle, appellant did not disclose any of these items to the police during the questioning.
 {¶ 9} The government subsequently indicted appellant, who had previous felony convictions, for possession of firearms in violation of18 U.S.C. Section 922(g) (1). See, United States v. Ross (ND OH Dec. 26, 2007), No. 5:07 CR 86 ___ F.3d ___, 2007 WL 4572571. Appellant was also indicted by the Stark County Grand Jury on one count of possession of cocaine, a felony of the fourth degree in violation of R.C. 2925.11, and *Page 5 
one count of trafficking in cocaine, a felony of the fourth degree, in violation of R.C. 2925.11.
 {¶ 10} Appellant filed a motion to suppress evidence. The trial court conducted the suppression hearing on April 10, 2007. At the conclusion of the hearing, the trial court denied appellant's motion to suppress the evidence gathered against him. Appellant then entered pleas of no contest to the charges and the court found him guilty of both counts. The trial court sentenced appellant to six months in prison, concurrent on each count. The sentence was also ordered to run consecutive to appellant's fourteen-month sentence in an unrelated case.
 {¶ 11} Appellant timely appealed and raises the following two assignment of error for our consideration:
 {¶ 12} "I. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS EVIDENCE.
 {¶ 13} "II. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS THE ILLEGALLY OBTAINED STATEMENTS."
 I. {¶ 14} In his first assignment of error, appellant argues that the trial court erred in denying his motion to suppress and in finding that Sergeant Dittmore had a reasonable suspicion to stop him. We disagree.
 {¶ 15} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has *Page 6 
incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. State v. Curry (1994), 95 Ohio App. 3d 93, 96; State v.Claytor (1993), 85 Ohio App.3d 623, 627; State v. Guysinger (1993),86 Ohio App.3d 592. As the United States Supreme Court held in Ornelas v.U.S. (1996), 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 16} In the instant appeal, appellant's challenge of the trial court's ruling on his motion to suppress is based on the third method. Accordingly, this court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in this case.
 {¶ 17} In a motion to suppress, the trial court assumes the role of trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. Guysinger, supra, at 594 (citations omitted). Accordingly, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Id., citing State v. Fausnaugh (Apr. 30, 1992), Ross App. No. 1778.
 {¶ 18} The question in the case at bar is whether the contact of the police officers with appellant violated the appellant's Fourth Amendment rights.
 {¶ 19} Contact between police officers and the public can be characterized in three different ways. State v. Richardson, 5th Dist. No. 2004CA00205, 2005-Ohio-554 at ¶ 23-27. The first is contact initiated by a police officer for purposes of investigation. "[M]erely approaching an individual on the street or in another public place [,]" seeking *Page 7 
to ask questions for voluntary, uncoerced responses, does not violate the Fourth Amendment. United States v. Flowers (6th Cir.1990),909 F.2d 145, 147. The United State Supreme Court "[has] held repeatedly that mere police questioning does not constitute a seizure." Florida v.Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); see also INS v. Delgado, 466 U.S. 210, 212, 104 S.Ct. 1758, 80 L.Ed.2d 247
(1984). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage." Bostick, supra, at 434-435, 111 S.Ct. 2382
(citations omitted). The person approached, however, need not answer any question put to him, and may continue on his way. Florida v. Royer
(1983), 460 U .S. 491, 497-98. Moreover, he may not be detained even momentarily for his refusal to listen or answer. Id.
 {¶ 20} The second type of contact is generally referred to as "aTerry stop" and is predicated upon reasonable suspicion.Richardson, supra; Flowers, 909 F.2d at 147; See Terry v. Ohio (1968),392 U.S. 1. This temporary detention, although a seizure, does not violate the Fourth Amendment. Under the Terry doctrine, "certain seizures are justifiable . . . if there is articulable suspicion that a person has committed or is about to commit a crime" Florida,460 U.S. at 498. In holding that the police officer's actions were reasonable under the Fourth Amendment, Justice Rehnquist provided the following discussion of the holding in Terry: "In Terry this Court recognized that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. The Fourth Amendment does not require a police officer who *Page 8 
lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. Adams v. Williams (1972), 407 U.S. 143, 145-47, 92 S. Ct. 1921,1923-24, 32 L. Ed.2d 612.
 {¶ 21} The third type of contact arises when an officer has "probable cause to believe a crime has been committed and the person stopped committed it." Richardson, supra; Flowers, 909 F. 2d at 147. A warrantless arrest is constitutionally valid if: "[a]t the moment the arrest was made, the officers had probable cause to make it-whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the * * * [individual] had committed or was committing an offense." State v. Heston (1972),29 Ohio St.2d 152, 155-156, 280 N.E.2d 376, quoting Beck v. Ohio (1964),379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142. "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." Ornelas v. United States (1996), 517 U.S. 690,696, 116 S.Ct. 1657, 1661-1162. A police officer may draw inferences based on his own experience in deciding whether probable cause exists. See, e.g., United States v. Ortiz (1975), 422 U.S. 891, 897,95 S.Ct. 2585, 2589. *Page 9 
 {¶ 22} In the case at bar, the initial contact with appellant is best placed into the second category. Upon review, under the totality of the circumstances, we conclude the events in the case sub judice constituted an investigative stop such that the officers were required to have a reasonable, articulable suspicion that the appellant was a person who has committed or is about to commit a crime.
 {¶ 23} Reasonable suspicion can arise from information that is less reliable than that required to show probable cause. Alabama v.White (1990), 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301. However, it requires something more than an "inchoate and unparticularized suspicion or `hunch.' "Terry v. Ohio (1968),392 U.S. 1, 27, 88 S. Ct. 1868, 20 L.Ed.2d 889. "[T]he Fourth Amendment requires at least a minimal level of objective justification for making the stop." Illinois v. Wardlow (2000), 528 U.S. 119, 123, 120 S. Ct. 673,145 L. Ed.2d 570.
 {¶ 24} Where the information possessed by the police before the stop was solely from an informant's tip, the determination of reasonable suspicion will be limited to an examination of the weight to be given the tip and the reliability of the tip. Id. at 299, 720 N.E. 2d 507. Courts have generally identified three classes of informants: the anonymous informant, the known informant from the criminal world who has provided previous reliable tips, and the identified citizen informant. Id. at 300, 720 N.E. 2d 507. An identified citizen informant may be highly reliable, and therefore a strong showing as to other indicia of reliability may be unnecessary. Id. Thus, courts have routinely credited the identified citizen informant with greater reliability. Id.
 {¶ 25} Appellant argues that the police had insufficient reasonable suspicion or probable cause to support their initial stop. *Page 10 
 {¶ 26} A tip which standing alone would lack sufficient indicia of reliability may establish reasonable suspicion to make an investigatory stop if it is sufficiently corroborated through independent police work.Alabama v. White (1990), 496 U.S. 325.
 {¶ 27} In this case, the caller provided the officers with specific identification of the race, and attire of a suspect. The caller was an eyewitness who lived near the address. This supports the suggestion that she was an eyewitness to what she believed to be criminal activity. The officers responded within moments of the dispatch. No other individuals were observed in the vicinity. It was not until later that the police discovered that the vice squad was executing a search warrant at the time and place of the reported burglary. [ST. at 38-39].
 {¶ 28} Appellant's decision to flee further supported the stop. "Headlong flight-wherever it occurs-is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainty suggestive of such." Illinois v. Wardlaw, supra, 528 U.S. at 124,120 S. Ct. 673. "Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning." Id. at 125, 120 S. Ct. 673. The description and the flight created probable cause to support the arrest. See Weaver v. Shadoan (6th Cir.2003), 340 F. 3d 398, 409;United States v. Dotson (6th Cir. 1995), 49 F.3d 227,231.
 {¶ 29} The United States District Court for the Northern District of Ohio, Eastern Division came to a similar conclusion in appellant's federal prosecution:
 {¶ 30} "He was not chosen randomly. Defendant matched the description given in the anonymous call. He was observed with two other men, and one of the men was *Page 11 
wearing a brown jacket and had an afro-style haircut. The men were observed within one street of the alleged break-in, and they were the only individuals on the otherwise-deserted street at a late hour. Of the three men, only Defendant fled when Sergeant Dittmore identified himself as a police officer and approached the men to ask for identification. Defendant did not stop when Sergeant Dittmore chased him and shouted, "Stop, police." Accordingly, based upon the totality of the circumstances, Sergeant Dittmore had a reasonable suspicion to justify the investigative detention of Defendant." United States v. Ross (ND OH Dec. 26, 2007), No. 5:07 CR 86 ___ F.3d ___, 2007 WL 4572571 at *3.
 {¶ 31} In the case at bar, we find that an arrest did not occur at the moment that Sergeant Dittmore attempted to physically prevent appellant's escape. Instead, Sergeant Dittmore used a reasonable degree of force to make an investigatory stop.
 {¶ 32} Furthermore, we find that appellant's efforts to flee, coupled with Sergeant Dittmore reasonable suspicion that appellant was involved in criminal activities, established probable cause to arrest appellant.
 {¶ 33} Based upon the above, we find the trial court properly overruled the motion to suppress.
 {¶ 34} Appellant's first assignment of error is overruled.
 II. {¶ 35} Appellant argues that the statements he made at the police station were not voluntary and therefore was obtained in violation of the Due Process Clause. We disagree. *Page 12 
 {¶ 36} Appellant contends that the police promised not to charge him with the drug charges and this is the reason he disclosed information to them.
 {¶ 37} The Federal Court reviewed an identical argument with respect to appellant's indictment for possession of firearms in violation of18 U.S.C. Section 922(g) (1). The Court noted:
 {¶ 38} "In deciding whether the police's activities induced the defendants in United States v. Wrice, 954 F. 2d 406, 411 (6th Cir.1992), to make incriminating statements to a prosecutor, the Sixth Circuit observed that the defendants, while in custody, asked to speak to a prosecutor. The court stated that, `from this fact, it is reasonable to infer that the ensuing discussion about sentence reduction and undercover cooperation was within the contemplation of the defendants when they asked to speak to a prosecutor, and not the result of illegitimate efforts to coerce them to confess.' Id.
 {¶ 39} "Here, the totality of the circumstances shows that [Ross'] will was not overborne by the police, and that the police's conduct was not the crucial motivating factor in his making inculpatory statements. Similar to the defendants in Wrice, [Ross] asked to speak to Sergeant Dittmore at the arrest scene. [Ross] volunteered to become a confidential informant, stating that he had previously been a confidential informant in three other states. Based on [Ross'] past experience as a confidential informant, [Ross] knew he would have to make full and frank disclosures of his criminal activities in order for the police to use him as a confidential informant. Therefore, [Ross'] initiation of contact with Sergeant Dittmore shows that, like the defendant in Wrice, it was within his contemplation to make inculpatory statements, and these statements were not the result *Page 13 
of any illegitimate effort by Sergeant Dittmore to coerce him to confess. Moreover, [Ross] had ample experience with arrests in the past. Like the defendant in [United States v. Starks, No. 95-4105, 1997 U.S. App. LEXIS 12016], [Ross] received Miranda warnings, Sergeant Dittmore's questioning of [Ross] at the station house was not inordinately lengthy, and [Ross] was not a victim of coercive police tactics, such as sleep deprivation. Accordingly, the court finds that [Ross'] incriminating statements were voluntary." Id. at *6.
 {¶ 40} We agree with the well-reasoned opinion of The United States District Court in Ross, supra.
 {¶ 41} Appellant's second assignment of error is overruled.
 {¶ 42} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
 Gwin, P.J., Farmer, J., and Wise, J., concur *Page 14 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed. Costs to appellant. *Page 1