[Cite as *State v. Young*, 2011-Ohio-4750.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellant | : | Hon. Julie A. Edwards, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2011-CA-00122 |
| CHANCE R. YOUNG | : |  |
|  | : |  |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Criminal appeal from the Alliance Municipal
                                                        Court, Case No. 2011TRD00535

JUDGMENT:                                     Reversed and Remanded

DATE OF JUDGMENT ENTRY:        September 19, 2011

APPEARANCES:

For Plaintiff-Appellant                      For Defendant-Appellee

WILLIAM F. MORRIS                       JEFFREY R. JAKMIDES
Alliance City Prosecutor                   325 E. Main Street
470 East Market Street                    Alliance, OH  44601
Alliance, OH  44601

*Gwin, P.J.*

{¶1} Plaintiff-appellant State of Ohio appeals the May 26, 2011 Judgment Entry of the Alliance Municipal Court granting defendant-appellee Chance R. Young's motion to suppress evidence.

STATEMENT OF THE FACTS AND CASE

{¶2} During the morning hours of March 7, 2011 Alliance Police Detective Robert Rajcan, while operating an unmarked police cruiser, observed a motor vehicle pull to the curb in front of 197 West Main Street, Alliance, Ohio. Detective Rajcan recognized the vehicle as belonging to Pamela Stovall, who Detective Rajcan knew to reside at that address.

{¶3} As the driver was observed to be a black male, Detective Rajcan suspected that it was being operated by Patricia Stovall's son, Cortez Brisker (hereinafter referred to as "Brisker"). Detective Rajcan knew that Brisker did not possess a valid operator's license. Detective Rajcan was not able to identify the driver as he passed by the vehicle and so he slowed his vehicle and proceeded down the street looking into his rear view mirror expecting the driver to exit. The driver did not exit the car in Detective Rajcan's view.

{¶4} Approximately two hours later, while returning to the police station from lunch with Alliance Police Captain James Hilles, Detective Rajcan again observed this same vehicle proceeding east bound on West Main Street. Captain Hilles and Detective Rajcan were inside an unmarked police department SUV.[1] Detective Rajcan shared

---

[1] A black 2010 Ford Expedition

with Captain Hilles, who was operating the SUV, what he had observed earlier in the day and that he suspected Brisker to be the operator of the vehicle.[2]

{¶5} Detective Rajcan was dressed in "plain clothes", which he recalled being blue jeans and a T-shirt, with his badge hanging from a chain around his neck. The vehicle had initially signaled to make a left turn into the driveway of 197 West Main Street, but instead pulled to the side of the road in front of the residence. Detective Rajcan asked Captain Hilles to pull to the side of the road to see if they could observe somebody exit the vehicle, and, if it was Brisker, Detective Rajcan would make contact with him since he knew that he did not possess a valid driver's license.

{¶6} Captain Hilles pulled the SUV to the side of the road approximately one car length behind the Stovall vehicle. Captain Hilles and Detective Rajcan then waited to see who would step from the vehicle. Detective Rajcan testified, "The operator was actually free to...uh... if the operator would have pulled away at any point in time, they were—they were free to go." (Supp. T., April 15, 2011 at 8; 10). Detective Rajcan at this point was unable to identify the occupants, other than that they were a black female passenger (who he believed was the registered owner, Pamela Stovall) and a black male operator. Detective Rajcan knew Pamela Stovall possessed a valid driver's license, but the only black males he knew to ever operate the vehicle did not possess a valid driver's license.[3]

{¶7} Detective Rajcan observed the operator of the Stovall vehicle open the driver's side door and look back, but was still unable to identify who the subject was. Despite the fact that the car door was open, the operator did not to exit the vehicle.

---

[2] The parties have stipulated that neither Detective Rajcan nor Captain Hilles were on specific assignment to enforce the motor vehicle or traffic laws of the City of Alliance or the State of Ohio.

[3] Brisker, Kenny Stovall, and appellant.

Detective Rajcan advised Captain Hilles that the individual could be waiting for traffic to go by to get out and instructed Captain Hilles to wait to give the subject time to exit, so that "traffic" would not be an excuse. Detective Rajcan and Captain Hilles continued to wait in the SUV for approximately twenty minutes, during which time the driver's door remained open.

{¶8} After the twenty minute wait and with the driver's door still opened Detective Rajcan exited the SUV and approached the Stovall vehicle to see "what the problem was." It seemed suspicious to Detective Rajcan that someone would not exit from their parked vehicle, particularly with the car door opened. This, Detective Rajcan felt, was consistent with someone not wanting to be identified. The vehicle was observed not to be running.

{¶9} Detective Rajcan "went to walk past the vehicle" by the driver's door. Detective Rajcan's service revolver a .45 caliber Kimber remained holstered and concealed beneath his T-shirt. Detective Rajcan testified, "I was walking up past the driver's door. If he would have shut the door and pulled away, I had no reason to stop him. He was free to go the entire time, until I determined who it was and the fact that he didn't have a driver's license. But up to that point, at any point, he could have shut the door and just pulled away."

{¶10} While approaching the driver's door Detective Rajcan immediately recognized appellee. Detective Rajcan stated to him, "Chance you—you don't have a driver's license" to which appellee replied, "I know I don't have a driver's license." Detective Rajcan knew that appellee had three or four open drug suspensions on his driver's license. Appellee was calm and cooperative. When inquiry was made as to why

appellee was operating the vehicle, he explained that Pamela Stovall was not feeling well.

{¶11} Appellee was placed under arrest for Operating a Vehicle with a Suspended Driver's License (Drug Conviction), in violation of R.C.4510.17.

{¶12} On March 18, 2011 a hearing was held on the State's motion to release evidence seized from appellee at the time of his arrest. At the conclusion of the hearing at which Detective Rajcan testified, the trial court ordered the funds confiscated from appellee at the time of his arrest be returned to him. The trial court further granted appellee leave to file a motion to suppress and set that matter for hearing.

{¶13} A hearing was held on appellee's motion to suppress on April 15, 2011. At that time the parties stipulated that the trial court could consider the testimony presented at the hearing held on March 18, 2011 on State's Motion to Release Evidence in deciding the appellee's Motion to Suppress.

{¶14} By Judgment Entry filed May 26, 2011 the trial court granted appellee's Motion to Suppress. The State filed a notice of appeal on May 31, 2011. Also on May 31, 2011 the State filed notice as required by Crim. R. 12(K). It herein raises the following four Assignments of Error:

{¶15} "I. THE TRIAL COURT ERRED IN RULING THAT OFFICER RAJCAN'S TWENTY MINUTE WAIT INSIDE AN UNMARKED POLICE VEHICLE PARKED BEHIND A VEHICLE OPERATED AND OCCUPIED BY THE DEFENDANT-APPELLEE CONSTITUTED A "STOP" GOVERNED BY *TERRY V. OHIO*, 392 U.S. 1 (1968) AND SUPPRESSING THE EVIDENCE THAT FLOWED FROM THIS ENCOUNTER.

{¶16} "II. THE TRIAL COURT ERRED IN RULING THAT OFFICER RAJCAN'S APPROACH OF THE DEFENDANT-APPELLEE FOLLOWING A TWENTY MINUTE WAIT INSIDE AN UNMARKED POLICE VEHICLE PARKED BEHIND THE VEHICLE OPERATED AND OCCUPIED BY THE DEFENDANT-APPELLEE CONSTITUTED A "STOP" GOVERNED BY *TERRY V. OHIO, 392* U.S. 1 (1968) AND SUPPRESSING THE EVIDENCE THAT FLOWED FROM THIS ENCOUNTER.

{¶17} "III. THE TRIAL COURT ERRED IN RULING THAT OFFICER RAJCAN'S QUESTIONING OF THE DEFENDANT-APPELLEE FOLLOWING HIS IDENTIFICATION AS AN INDIVIDUAL WHO DID NOT POSSESS A VALID DRIVER'S LICENSE CONSTITUTED A "STOP" GOVERNED BY *TERRY V. OHIO, 392* U.S. 1 (1968) AND SUPPRESSING THE EVIDENCE THAT FLOWED FROM THIS ENCOUNTER.

{¶18} "IV. THE TRIAL COURT ERRED IN FINDING AS A MATTER OF FACT THAT THE DEFENDANT-APPELLEE DID NOT FEEL FREE TO LEAVE THE AREA AND FREE TO RESPOND TO ANY QUESTIONS OF THE INVESTIGATING OFFICER."

I. II III and IV.

{¶19} Appellant's four assignments of error relates to the propriety of the trial court's granting of the motion to suppress in favor of the appellee. Appellant's four assignments of error raise common and interrelated issues; therefore, we will address the arguments together.

{¶20} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 797 N.E.2d 71, 74, 20030-

Ohio-5372 at ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap* (1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988; *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583. Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long* (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1; *State v. Medcalf* (1996), 111 Ohio App.3d 142, 675 N.E.2d 1268. However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See B*urnside,* supra, citing *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539; See, generally, *United States v. Arvizu* (2002), 534 U.S. 266, 122 S.Ct. 744; *Ornelas v. United States* (1996), 517 U.S. 690, 116 S.Ct. 1657. That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review. *Ornelas*, supra.  Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

{¶21}  The question in the case at bar is whether the contact of the police officers with appellee violated the appellee's Fourth Amendment rights.

{¶22}  Contact between police officers and the public can be characterized in three different ways. *State v. Richardson,* 5th Dist. No.2004CA00205, 2005-Ohio-554 at ¶ 23-27. The first is contact initiated by a police officer for purposes of investigation. "[M]erely approaching an individual on the street or in another public place [,]" seeking to ask questions for voluntary, uncoerced responses, does not violate the Fourth

Amendment. *United States v. Flowers* (6th Cir.1990), 909 F.2d 145, 147. The United State Supreme Court "[has] held repeatedly that mere police questioning does not constitute a seizure." *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); see also *INS v. Delgado,* 466 U.S. 210, 212, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage." *Bostick,* supra*,* at 434-435, 111 S.Ct. 2382 (citations omitted). The person approached, however, need not answer any question put to him, and may continue on his way. *Florida v. Royer* (1983), 460 U .S. 491, 497-98. Moreover, he may not be detained even momentarily for his refusal to listen or answer. Id.

{¶23} The second type of contact is generally referred to as "a *Terry* stop" and is predicated upon reasonable suspicion. *Richardson,* supra*; Flowers,* 909 F.2d at 147; See *Terry v. Ohio* (1968), 392 U.S. 1. This temporary detention, although a seizure, does not violate the Fourth Amendment. Under the *Terry* doctrine, "certain seizures are justifiable ... if there is articulable suspicion that a person has committed or is about to commit a crime" *Florida,* 460 U.S. at 498. In holding that the police officer's actions were reasonable under the Fourth Amendment, Justice Rehnquist provided the following discussion of the holding in *Terry:* "In *Terry* this Court recognized that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply

shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. *Adams v. Williams* (1972), 407 U.S. 143, 145-47, 92 S.Ct. 1921, 1923-24, 32 L.Ed.2d 612.

{¶24} The Fourth Amendment requires that officers have had a "reasonable fear for his own or others' safety" before frisking. *Terry v. Ohio* (1968), 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889. Specifically, "[t]he officer ... must be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.' "*United States v. Sokolow* (1989), 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (quoting *Terry,* 392 U.S. at 27, 88 S.Ct. 1868). Whether that standard is met must be determined "'from the standpoint of an objectively reasonable police officer," ' without reference to "the actual motivations of the individual officers involved." *United States v. Hill* (D.C.Cir.1997), 131 F .3d 1056, 1059 (quoting *Ornelas v. United States* (1996), 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911).

{¶25} The third type of contact arises when an officer has "probable cause to believe a crime has been committed and the person stopped committed it." *Richardson,* supra*; Flowers,* 909 F. 2d at 147. A warrantless arrest is constitutionally valid if: "[a]t the moment the arrest was made, the officers had probable cause to make it-whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the * * * [individual] had committed or was committing an offense." *State v. Heston*

(1972), 29 Ohio St.2d 152, 155-156, 280 N.E.2d 376, quoting *Beck v. Ohio* (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142. "The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause." *Ornelas v. United States* (1996), 517 U.S. 690, 696, 116 S.Ct. 1657, 1661-1162. A police officer may draw inferences based on his own experience in deciding whether probable cause exists. See, e.g., *United States v. Ortiz* (1975), 422 U.S. 891, 897, 95 S.Ct. 2585, 2589.

{¶26} In *Florida v. Bostick* (1991), 501 U.S. 429, 111 S .Ct. 2382, the United States Supreme Court reiterated that "a consensual encounter does not trigger Fourth Amendment scrutiny. See *Terry v. Ohio,* 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 1879, n. 16, 20 L. Ed. 2d 889. Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions, *Florida v. Rodriguez,* 469 U.S. 1, 5-6, 105 S.Ct. 308, 310-311, 83 L.Ed.2d 165, ask to examine identification, *INS v. Delgado,* 466 U.S. 210, 216, 104 S.Ct. 1758, 1762-1763, 80 L.Ed.2d 247, and request consent to search luggage, *Florida v. Royer,* 460 U.S. 491, 501, 103 S.Ct. 1319, 1326, 75 L.Ed.2d 229, provided they do not convey a message that compliance with their requests is required." 501 U.S. at 434-35, 111 S.Ct. at 2386. The courts in Ohio have taken a similar approach: "[b]ecause the vehicle was parked, appellant was not subjected to a seizure *per se* as happens when a motorist is stopped in transit by a police officer. Numerous Ohio courts ... have held that a police approach and encounter with a stationary vehicle is consensual in nature, thereby making the Fourth

Amendment inapplicable. See, e.g*., State v. Welz* (Dec. 9, 1994), Lake App. No. 93-L-137, unreported; *Cuyahoga Falls v. Sandstrom* (June 21, 1995), Summit App. No. 17000, unreported; *State v. Kiggans* (Nov. 20, 1995), Stark App. No.1995CA00157, unreported; *State v. Osborne* (Dec. 13, 1995), Montgomery App. No. CA 15151, unreported." *State v. Lott* (Dec. 26, 1997), 11[th] Dist. No. 96-A-0011.

**{¶27}** In the case at bar, the officers did not stop the vehicle which appellee was driving. The officers were in an unmarked, undercover vehicle which never activated lights or siren. The officers never motioned or otherwise requested appellee to pull over or to stop the vehicle. In addition, the record is silent as to appellee's feelings with regard to his ability to leave. Appellee did not testify at either the March 18 or April 15, 2011 hearings. Appellee does not contest in his brief to this court that based upon the original contact with the appellee and upon further investigation, probable cause existed to arrest the appellee for driving under a suspended driver's license.

**{¶28}** Accordingly, Detective Rajcan's approach and encounter with the stationary vehicle was consensual in nature, thereby making the Fourth Amendment inapplicable. The officer's request for appellee's identification was permissible. *INS v. Delgado,* 466 U.S. 210, 216, 104 S.Ct. 1758, 1762-1763, 80 L.Ed.2d 247.

**{¶29}** We find Detective Rajcan's contact with the appellee under the totality of the circumstances presented in this case does not amount to an unjustifiable intrusion by the government on the privacy of an individual such as to constitute a violation of the Fourth Amendment to the United States Constitution.

**{¶30}** Appellant's four assignments of error are sustained.

{¶31} For the forgoing reasons, the judgment of the Alliance Municipal Court, Stark County, Ohio, is reversed and this case is remanded to the trial court for further proceedings consistent with this opinion.

By Gwin, P.J.,

Hoffman, J., and

Edwards, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. JULIE A. EDWARDS

WSG:clw 0831

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                             :
                                          :
              Plaintiff-Appellant         :
                                          :
                                          :
-vs-                                      :        JUDGMENT ENTRY
                                          :
CHANCE R. YOUNG                           :
                                          :
                                          :
              Defendant-Appellee          :        CASE NO. 2011-CA-00122


    For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Alliance Municipal Court, Stark County, Ohio, is reversed and remand this case is remanded to the trial court for further proceedings consistent with this opinion. Costs to appellee.


_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. JULIE A. EDWARDS