OPINION
{¶ 1} Defendant-appellant Phillip L. Cummings appeals his convictions and sentences in the Canton Municipal Court on one count of Driving Under the Influence in violation of R.C. 4511.19
(A) (1), one count of Speeding in violation of Ohio Revised Code Section 4511.21(C), one count of Possession of Paraphernalia in violation of Ohio Revised Code Section 2925.14 and one count of Drug Abuse in violation of Ohio Revised Code Section 2925.11. The appellee is the State of Ohio. The following facts give rise to this appeal.
 {¶ 2} On September 7, 2005, at approximately 7:20 p.m., Trooper Lee of the Ohio State Highway Patrol stopped a vehicle at US 30 westbound just east of Harrison Avenue for speeding. (T at 5-6). Trooper Lee was in a marked vehicle and in uniform. (T at 5-6). Trooper Lee clocked the commercial bobtail truck traveling 65 miles per hour in a posted 55 miles per hour zone. (T at 6). Trooper Lee pulled appellant over and approached the truck to advise the driver why he stopped him. (T at 7). Appellant admitted speeding because he was late for work. (T at 7). Trooper Lee advised appellant he was going to be cited for speeding and went to his cruiser to write the citation. (T at 8). When Trooper Lee returned to the truck, he stepped up on the driver's floor board and smelled a strong odor of burnt marijuana. (T at 8). Trooper Lee indicated he had been trained to know the difference between a regular raw marijuana smell and a controlled burn smell. (T at 8). Trooper Lee asked appellant to step out of the vehicle and asked if he had smoked any marijuana. (T at 8). Appellant indicated that he had smoked "earlier." (T at 8). The Trooper asked appellant to perform three field sobriety tests. The first test was the Horizontal Gaze Nystagmus (HGN). (T at 9). Trooper Lee indicates he did not receive any clues on this test (T at 9). However, he did notice that the Appellants eyes were dilated. (T at 10). Trooper Lee then had appellant perform the Walk and Turn Test. (T at 9). Trooper Lee noted that he received three out of eight clues. (T at 9). Trooper Lee then had appellant perform the One Leg Stand Test and got one clue. (T at 10). Trooper Lee also noticed that appellant did not count correctly on this test. (T at 10). Trooper Lee then placed appellant under arrest for driving while under the influence. (T at 12). Trooper Lee conducted an administrative inventory of the commercial vehicle because it was being towed. (T at 14). During the search of the vehicle Trooper Lee found two marijuana cigarettes and a drug marijuana pipe with residue. (T at 14.) Appellant was charged with one count of OVI, in violation of Ohio Revised Code Section 4511.19(A) (1) (a), one count of Speeding in violation of Ohio Revised code section 4511.21(C), one count of Driving Under the Influence of a Controlled Substance in violation of Ohio Revised Code section 4506.15(A) (3) and one count of Drug Abuse in violation of Ohio Revised Code section2925.11.
 {¶ 3} On October 11, 2005 appellant filed a motion to suppress his refusal to take a blood alcohol test, evidence of marijuana and drug paraphernalia found in appellant's vehicle and the results of any Field Sobriety Tests not conducted in substantial compliance with The National Highway Traffic and Safety Administration ["NHTSA'] standards for administration of such tests. An evidentiary hearing was held in the trial court on November 1, 2005. Also on November 1, 2005, the Appellant was additionally charged with Possession of Paraphernalia in violation of Ohio Revised Code Section 2925.14. The trial court overruled appellant's motion by Judgment Entry filed November 16, 2005.
 {¶ 4} On November 17, 2005, Appellant entered a plea to one count of OVI, in violation of Ohio Revised Code Section 4511.19A1 (a), one count of Speeding in violation of Ohio Revised Code Section 4511.21(C), one count of Possession of Paraphernalia in violation of Ohio Revised Code Section 2925.14 and one count of Drug Abuse in violation of Ohio Revised Code Section 2925.11. One count of Driving Under the influence of a Controlled Substance in violation of Ohio Revised Code section 4506.15(A) (3) was dismissed.
 {¶ 5} The trial court ordered appellant to pay a fine of $600.00 plus court costs and further ordered appellant to serve 180 days in the Stark County Jail. The trial court suspended all but six days on the condition of appellant's good behavior for two years. Appellant was further ordered to complete the driver's intervention program. The trial court ordered appellant to pay a fine of $150.00 and court costs on the drug abuse charge and a fine of $250.00 and court costs and a thirty-day suspended jail sentence for the drug paraphernalia charge. The trial court ordered appellant to pay the court costs for the speeding charge. Finally the trial court suspended appellant's driver's license for 180 days.
 {¶ 6} Appellant filed a notice of appeal and this matter is now before this court for consideration of the following three assignments of error:
 {¶ 7} "I. THE TRIAL COURT ERRED IN FINDING THAT APPELLANT HAD PERFORMED POORLY ON TWO OF THREE FIELD SOBRIETY TESTS WHEN THE ARRESTING TROOPER CONCEDED THAT HE HAD NOT EVALUATED ONE OF THE TWO DISPUTED TESTS IN ACCORDANCE WITH THE CRITERIA PRESCRIBED BY THE NHTSA, UNDER WHICH CRITERIA APPELLANT WOULD HAVE PASSED, AND WHEN THE EVIDENCE DID NOT DEMONSTRATE STRICT COMPLIANCE WITH THE NHTSA MANUAL IN ADMINISTERING THE REMAINING TEST.
 {¶ 8} "II. THE TRIAL COURT ERRED IN FINDING THAT THE TOTALITY OF THE CIRCUMSTANCES OF APPELLANT'S ARREST ESTABLISHED PROBABLE CAUSE TO BELIEVE HE WAS UNDER THE INFLUENCE WHEN THE TROOPER CONCEDED THAT HE HAD OBSERVED NO POOR DRIVING OTHER THAN 65 MPH IN A 55 MPH (60 MPH FOR PASSENGER CARS) ZONE, THAT NOTHING ABOUT APPELLANT'S PRE-ARREST SPEECH OR ACTIONS INDICATED INTOXICATION, THAT PURSUANT TO NHTSA STANDARDS, APPELLANT PASSED TWO OF THREE STANDARDIZED FIELD SOBRIETY TESTS, THAT THE TROOPER HAD TAKEN "NOTES" ONLY ON HIS OWN HAND, AND THAT HE HAD FAILED TO VIDEO OR AUDIO TAPE HIS ENCOUNTER WITH APPELLANT, DESPITE HIS ABILITY TO DO SO, AGAINST WHICH THE TROOPER CITED ONLY APPELLANT'S STRONG ODOR OF MARIJUANA, DILATED PUPILS, ADMISSION TO HAVING SMOKED MARIJUANA `EARLIER,' `HAIR WAS PARTED IN THE MIDDLE,' AND WEARING `DARK GLASSES.
 {¶ 9} "III. THE TRIAL COURT ERRED IN DECLINING TO SUPPRESS THE RESULTS OF THE FIELD SOBRIETY TESTS FOR BAD-FAITH DESTRUCTION OF EXCULPATORY EVIDENCE WHEN THERE WAS STRONG EVIDENCE THAT APPELLANT HAD PERFORMED WELL ON HIS FIELD SOBRIETY TESTS, WHEN THE TROOPER SHOWED EVIDENCE OF BIAS AGAINST APPELLANT, AND WHEN THE TROOPER ADMITTED THAT HE TOOK "NOTES" ONLY ON HIS OWN HAND, WHICH NOTES HE INTENDED THEREAFTER TO WASH AWAY, AND THAT HE HAD FAILED TO VIDEO OR AUDIO TAPE ANY PART OF HIS ENCOUNTER WITH APPELLANT, DESPITE HIS ABILITY TO DO SO".
 I. II. {¶ 10} In his first assignment of error, appellant argues that the trial court erred in denying his motion to suppress; in his second assignment of error appellant argues that the trial court erred in finding that State Trooper William F. Lee had probable cause to arrest appellant. Both assignments of error concern the similar issues and thus will be addresses together.
 {¶ 11} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See: State v. Fanning (1982), 1 Ohio St.3d 19,437 N.E.2d 583; State v. Klein (1991), 73 Ohio App.3d 486,597 N.E.2d 1141, State v. Guysinger (1993), 86 Ohio App.3d 592,621 N.E.2d 726. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See: State v. Williams
(1993), 86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial courts conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry
(1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172, State v.Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908, and State v. Guysinger (1993), 86 Ohio App.3d 592, 594,621 N.E.2d 726. In this case, Appellant is contending that the trial court incorrectly decided the ultimate issue.
 {¶ 12} In a motion to suppress, the trial court assumes the role of trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate witness credibility.Guysinger, supra, at 594 (citations omitted). Accordingly, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Id., citing State v. Fausnaugh (Apr. 30, 1992), Ross App. No. 1778.
 {¶ 13} Appellant argues that there were no other indicia of impairment to support probable cause for the arrest. Appellant further argues that the common indicia of impairment, i.e. bloodshot eyes, slurred speech, and/or an odor of alcoholic beverage or a drug of abuse, are insufficient by themselves to demonstrate probable cause for an OVI arrest absent some evidence of actual impairment.
 {¶ 14} We have previously recited that a police officer does not have to observe poor driving performance in order to affect an arrest for driving under the influence of alcohol if all the facts and circumstances lead to the conclusion that the driver was impaired. See, e.g., State v. Harrop (July 2, 2001), Muskingum App. No. CT2000-0026, 2001 WL 815538, citing Atwell v.State (1973), 35 Ohio App.2d 221, 301 N.E.2d 709.
 {¶ 15} An officer has probable cause for an arrest if the facts and circumstances within his knowledge are sufficient to cause a reasonably prudent person to believe that the defendant has committed the offense. E.g. State v. Heston (1972),29 Ohio St.2d 152, 280 N.E.2d 376, cert. denied, 409 U.S. 1038,93 S.Ct. 534, 34 L.Ed.2d 486.
 {¶ 16} In the case at bar, the officer had probable cause to stop the appellant's commercial vehicle for driving at a speed of 65 miles per hour in a 55 mile per hour zone. (T. at 6; 18-19). Accordingly, the narrow issue on this appeal is, therefore, whether the trooper had probable cause to arrest appellant for OVI.
 {¶ 17} The legal standard for determining whether the police had probable cause to arrest an individual for OVI is whether, "at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." State v.Homan (2000), 89 Ohio St.3d 421, 427, 732 N.E.2d 952; Beck v.Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142. "The arrest merely has to be supported by the arresting officer's observations of indicia of alcohol consumption and operation of a motor vehicle while under the influence of alcohol." Lloyd,
supra, 126 Ohio App.3d at 104, 709 N.E.2d 913. In making this determination, the trial court must examine the totality of facts and circumstances surrounding the arrest. See State v. Miller
(1997), 117 Ohio App.3d 750, 761, 691 N.E.2d 703; State v.Brandenburg (1987), 41 Ohio App.3d 109, 111, 534 N.E.2d 906. Of course, the same standard would apply to a person allegedly operating a motor vehicle while under the influence of a drug of abuse.
 {¶ 18} Furthermore, when evaluating probable cause to arrest for OVI, "[t]he totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered." Homan, supra,89 Ohio St.3d at 427, 732 N.E.2d 952. The case law is in agreement that probable cause to arrest may exist, even without field sobriety tests results, if supported by such factors as: evidence that the defendant caused an automobile accident; a strong odor of alcohol emanating from the defendant; an admission by the defendant that he or she was recently drinking alcohol; and other indicia of intoxication, such as red eyes, slurred speech, and difficulty walking. Oregon v. Szakovits (1972), 32 Ohio St.2d 271, 61 O.O.2d 496, 291 N.E.2d 742; Fairfield v. Regner (1985),23 Ohio App.3d 79, 84, 23 OBR 144, 491 N.E.2d 333; State v. Bernard
(1985), 20 Ohio App.3d 375, 376, 20 OBR 338, 485 N.E.2d 783;Westlake v. Vilfroy (1983), 11 Ohio App.3d 26, 27, 11 OBR 39,462 N.E.2d 1241.
 {¶ 19} As stated above, upon stepping upon the running board of appellant's truck, the trooper noticed a strong odor of burnt marijuana. (T. at 8; 21). When asked about this smell appellant admitted that he had smoked marijuana "earlier." (Id. at 9; 42). The trooper further noticed that the pupils of appellant's eyes were dilated. (Id. at 22; 25).
 {¶ 20} The Ohio Supreme Court has made clear that the officer may testify at trial regarding observations made during a defendant's performance of standardized field sobriety tests even absent proof of "strict compliance." State v. Schmitt (2004),101 Ohio St.3d 79, 84, 2004-Ohio-37 at ¶ 15, 801 N.E.2d 446, 450. Accordingly, Trooper Lee's observation of appellant's dilated pupils, the smell of marijuana, swaying, failure to count correctly and appellant's failure to properly follow instructions given to him would be admissible. See Schmitt supra at ¶ 15.
 {¶ 21} Further, the Ohio Supreme Court has held "[t]he smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to conduct a search".State v. Moore (2000), 90 Ohio St.3d 47, 2000-Ohio-10,734 N.E.2d 804 at syllabus. Similar to the facts in Moore in the case at bar, Trooper Lee testified regarding his training and experience in identifying and detecting the smell of marijuana. (T. at 8). There seems to be no dispute in this case that he was qualified to detect its characteristic odor. He testified that he did not detect the odor as he first approached the appellant's vehicle. However, once the Trooper stepped up on the running board of the truck, Trooper Lee immediately noticed the strong odor emanating from the inside of the vehicle.(T. at 8). Trooper Lee also testified that marijuana has a distinctive smell. (Id.). Appellant admitted he had smoked marijuana. (Id. at 9; 42).
 {¶ 22} Upon our examination of the "totality" of facts and circumstances surrounding the stop and arrest, we conclude the record of the suppression hearing provided competent, credible evidence that appellant had admitted to smoking marijuana, that eyes were dilated, and that truck had an odor of marijuana emanating from the cab at the time of the stop. Taken in conjunction with the speed violation, we hold the circumstances as a whole created probable cause to believe that appellant was operating a motor vehicle while under the influence of drugs, regardless of the level of strict compliance with NHTSA field sobriety procedures.
 {¶ 23} In the case sub judice, based on our holding that probable cause was established even in the absence of field sobriety testing, the strict compliance issue is rendered moot.
 {¶ 24} Therefore, we find no error in the trial court's denial of appellant's motion to suppress.
 {¶ 25} Accordingly, appellant's First and Second Assignments of Error are overruled.
 III. {¶ 26} In his third assignment of error appellant argues that the trial court erred when it failed to suppress the field sobriety tests for bad faith destruction of evidence. Specifically appellant argues that the failure to videotape the appellant's traffic stop and Trooper Lee's destruction of his handwritten notes which described appellant's performance on the FST's mandate reversal. We disagree.
 {¶ 27} In Arizona v. Youngblood (1988), 488 U.S. 51,109 S.Ct. 333, 102 L.Ed.2d 281, the United States Supreme Court addressed the issue of whether a criminal defendant is denied due process of law by the State's failure to preserve evidence. The United States Supreme Court stated the following:
 {¶ 28} "The Due Process Clause of the Fourteenth Amendment, as interpreted in [Maryland v. Brady (1963), 373 U.S. 83,83 S.Ct. 1194, 10 L.Ed.2d 215], makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant. . . . We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id. at 57-58.
 {¶ 29} Thus, the Youngblood Court established two tests: one that applies when the evidence is "materially exculpatory" and one when the evidence is "potentially useful." If the State fails to preserve evidence that is materially exculpatory, the defendant's rights have been violated. If, on the other hand, the State fails to preserve evidence that is potentially useful, the defendant's rights have been violated only upon a showing of bad faith. State v. Combs, 5th Dist. No. 03CA-C-12-073,2004-Ohio-6574 at ¶ 16.
 {¶ 30} In the case at bar, the Trooper believed at the time of the stop that the appellant's traffic stop was being videotaped. (Id.). Trooper Lee first realized that his unit failed to record the stop when the prosecuting attorney requested a copy of the videotape during the course of appellant's case. (Id. at 30). Trooper Lee testified that he was not aware that the unit had run out of videotape at the time of the appellant's stop. (T. at 29-30).
 {¶ 31} In State v. Delarosa, 11th Dist. No. 2003-P-0129,2005-Ohio-3399, the court noted: ". . ., a review of NHTSA standards shows no requirement to videotape the field sobriety tests.
 {¶ 32} "Furthermore, a police officer's failure to videotape field sobriety tests is more akin to failing to create evidence rather than destroying evidence. See, e.g., State v. McDade,
12th Dist. Nos. CA2003-09-096 and CA2003-09-097, 2004-Ohio-3627, at ¶ 17. However, `there is no constitutional, statutory or common law duty to use a specific investigative tool in satisfying Homan's strict compliance mandate.' Athens v.Gilliand, 4th Dist. No. 02CA4, 2002-Ohio-4347, at ¶ 5. As a result, it is well established that `a police officer's failure to make a video and audio tape of a defendant's DUI traffic stop and field sobriety tests did not violate the defendant's due process rights warranting suppression of the evidence or dismissal of the charge.' McDade at ¶ 17. See, also, Gilliand
at ¶ 5; State v. Shepherd, 2nd Dist. No. 2002-CA-55, 2002-Ohio-6383, at ¶ 26; State v. Wooten, 4th Dist. No. 01 CA31, 2002-Ohio-1466". Id. at 2005-Ohio-3399 at ¶ 48-49.
 {¶ 33} Accordingly, as no videotape was ever in existence there could be no "destruction" or "failure to preserve" evidence.
 {¶ 34} With respect to the field notes that Trooper Lee wrote on his hand while he observed the appellant perform the FST'S, the trooper testified that he copied the information from his hand onto the "70 B" upon his arrival back at the post. Appellant has failed to demonstrate anywhere in the record that the information written on the trooper's hand while in the field differs in any way from the information contained in the official report prepared by the trooper.
 {¶ 35} The appellant has failed to establish that any evidence was "withheld" or "destroyed."
 {¶ 36} Accordingly, the trial court did not err when it failed to suppress the field sobriety tests for bad faith destruction of evidence.
 {¶ 37} Appellant's Third Assignment of Error is overruled.
 {¶ 38} Accordingly, the judgment of the Canton Municipal Court, Stark County, Ohio is affirmed.
Gwin, J., Wise, P.J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Canton Municipal Court, Stark County, Ohio is affirmed. Costs to appellant.