[Cite as *State v. Kiger*, 2018-Ohio-592.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. John W. Wise, P.J.<br>Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | Hon. Craig R. Baldwin, J. |
| -vs- | Case No. 17-CA-46 |
| EMILY H.I. KIGER | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Licking County Court of
Common Pleas, Case No. 16 CR 697

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      February 9, 2018

APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

HAWKEN FLANAGAN      STEPHEN T. WOLFE
Assistant Prosecuting Attorney      Wolfe Law Group, LLC
Licking County, Ohio      1350 W. 5th Ave., Suite 124
20 South Second Street, 4th Floor      Columbus, Ohio 43212
Newark, Ohio 43055

*Hoffman, J.*

{¶1}   Defendant-appellant Emily H.I. Kiger appeals her convictions and sentence entered by the Licking County Court of Common Pleas, on one count of aggravated vehicular homicide, in violation of R.C. 2903.06(A)(1)(a)(B)(1)(2)(a); one count of operating a motor vehicle while under the influence, in violation of R.C. 4511.19(A)(1)(a)(G)(1)(a)( i); one count of operating a motor vehicle while under the influence, in violation of R.C. 4511.19(A)(1)(f)(G)(1)(a)(i i); and one count of failure to obey a traffic control device, in violation of R.C. 4511.12(A)(B).  Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}   At approximately 1:30 a.m. on May 8, 2016, officers from the Newark Police Department were dispatched to the scene of an auto accident at the intersection of Main and Union Streets in Newark, Licking County, Ohio. Upon their arrival, officers observed two disabled vehicles, a silver Lexus SUV and a black Dodge pickup truck.  Appellant, who was identified as the driver and sole occupant of the Lexus, was found in the vehicle, restrained in the driver's seat.  David Ehlerman, who was identified as the driver and sole occupant of the pickup truck, had been ejected from his vehicle and was found on the roadway.  Ehlerman was unconscious and unresponsive when officers reached him.  He was transported to the Ohio State University Medical Center in Columbus, where he died of his injuries on May 9, 2016.

{¶3}   Officer Ray Lewis arrived at the scene, and made contact with Appellant while she was still in her vehicle.  Although Appellant was conscious, she was not fully aware of her surroundings.  Officer Lewis detected an odor of alcohol emanating from

Appellant's vehicle, but was unable to further investigate due to Appellant's condition. Emergency medical personnel arrived at the scene and assumed care of Appellant. Thereafter, Officer Lewis assisted the other officers with the accident investigation.

{¶4} Lisa Carkin and Victoria Fitzsimmons witnessed the accident. They were together in a vehicle on Union Street, stopped at a red light at the intersection of Main and Union Streets. Ehlerman was in the vehicle next to them at the intersection. Carkin and Fitzsimmons testified Ehlerman did not pull into the intersection until after the light had turned green. As Carkin was attempting to turn left onto Main Street, she observed Appellant out of the corner of her eye. Carkin immediately slammed on the brakes. She and Fitzsimmons stated Appellant was traveling at a high rate of speed and drove into the intersection through a red light, colliding with Ehlerman's truck.

{¶5} Based upon the conditions and locations of the vehicles, Officer Lewis believed Appellant was at fault. Officer Lewis also believed Appellant may have been under the influence of alcohol based upon the odor of alcohol coming from the vehicle, the time of the accident, and the eyewitness accounts Appellant had been traveling at a high rate of speed when she failed to stop at the red light and drove through the intersection.

{¶6} Officer Lewis informed his supervisor of his suspicion, and received authorization to attempt to obtain a blood alcohol test from Appellant. Appellant had been transported to the Ohio State University Medical Center due to her injuries. Officer Lewis retrieved a blood test kit from the police department and proceeded to the hospital. When Officer Lewis arrived at the hospital at approximately 3:00 a.m., he located Appellant in the triage area. Appellant was not conscious; therefore, the officer was unable to obtain

her consent for the blood draw.  Although Officer Lewis contemplated requesting a search warrant, he determined he would not be able to obtain the warrant and complete the blood draw within the statutory three-hour window following the accident.  Officer Lewis was unfamiliar with the procedures for obtaining an after-hours warrant in Columbus, and believed the evidence of Appellant's intoxication would be compromised if he pursued a search warrant rather than proceed with a warrantless blood draw.

{¶7}  Hospital personnel performed the blood draw at approximately 3:15 a.m. on May 8, 2016.  The specimen was tested at the Ohio State Highway Patrol Crime Lab.  The results established Appellant had a blood alcohol content of 0.210.

{¶8}  Over the course of investigating the accident, officers contacted Zachary Bell.  Bell advised the officers he came into contact with Appellant outside of Hooligan's Bar in Newark, on the night of the accident.  Bell observed Appellant and another individual in a heated discussion.  Appellant was crying.  Appellant approached Bell's vehicle.  Initially, Bell thought Appellant was someone he knew, but soon realized he was mistaken.  Appellant asked Bell for a ride home.  After speaking with the gentleman with whom Appellant had been in the heated discussion as well as Appellant, Bell agreed.  Appellant was highly intoxicated and either would not or could not provide Bell with her address.  Bell drove around for 30-45 minutes without being able to find out where Appellant lived.  Bell returned to Hooligan's with Appellant in hopes of finding her friends.

{¶9}  Bell and Appellant entered the establishment.  While Bell was using the restroom, Appellant left the bar and returned to her vehicle.  Bell found Appellant in her vehicle and informed her she was in no condition to drive, and asked her to exit the vehicle.  Appellant refused and drove out of the parking lot.  Bell proceeded to his own

vehicle and attempted to catch up to Appellant. He flashed his lights and honked his horn, trying to get Appellant's attention. Bell followed Appellant for a short time, but ended his pursuit due to the high rate of speed at which Appellant was driving. Bell stopped following Appellant approximately ½ to 1 mile before the intersection where the accident occurred.

{¶10} Law enforcement personnel retrieved the airbag control modules from Appellant's Lexus and Ehlerman's pickup truck. Bradley Long, an Ohio State Highway Patrol trooper, conducted an analysis of the modules. The analysis revealed Ehlerman's pickup truck was traveling at a speed of 13 mph at the time of impact and Ehlerman had just started to apply the brakes. The analysis further revealed Appellant's Lexus was traveling in excess of 70 mph 5 seconds prior to the collision, and continued at that speed until the moment of impact. There was no evidence Appellant applied her brakes.

{¶11} On November 10, 2016, the Licking County Grand Jury indicted Appellant on one count of aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a)(B)(1)(2)(a) ; one count of operating a motor vehicle while under the influence, in violation of R.C. 4511.19(A)(1)(a)(G)(1)(a)( i); one count of operating a motor vehicle while under the influence, in violation of R.C. 4511.19(A)(1)(f)(G)(1)(a)(i i); and one count of failure to obey a traffic control device, in violation or R.C. 4511.12(A)(B). Appellant appeared before the trial court for arraignment on November 17, 2016, and entered a plea of not guilty to the Indictment.

{¶12} On January 17, 2017, Appellant filed a motion to suppress the results of the warrantless blood draw. Appellant subsequently filed a supplement to the motion to suppress, which the trial court initially denied on March 15, 2017. Thereafter, Appellant

filed a motion for reconsideration/motion for leave to file a motion to suppress on March 29, 2017. The trial court conducted a hearing on the motions on April 24, 2017. Via Order filed May 8, 2017, the trial court denied Appellant's motion to suppress.

**{¶13}** The matter proceeded to jury trial on May 17, 2017. After hearing all the evidence and deliberating, the jury found Appellant guilty on Counts 1, 2, and 3. Count 4 was a minor misdemeanor and tried to the court. The trial court found Appellant guilty of Count 4. On June 26, 2017, following a pre-sentence investigation, the trial court sentenced Appellant to an aggregate term of imprisonment of 7 years.

**{¶14}** It is from these convictions and sentence, Appellant appeals, raising the following assignments of error:

1. THE TRIAL COURT ERRED IN FINDING THAT EXIGENT CIRCUMSTANCES EXISTED TO JUSTIFY THE WARRANTLESS BLOOD DRAW PERFORMED UPON THE APPELLANT

2. THE JURY'S VERDICTS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

3. THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS AND THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR ACQUITTAL PURSUANT TO CRIM.R.29

I

*Standard of Review*

**{¶15}** Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long,* 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks,* 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf,* 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams,* 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

**{¶16}** There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning,* 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein,* 73 Ohio App.3d 486, 597 N.E.2d 1141 (1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See, *Williams,* supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must

independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry,* 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

**{¶17}** In her first assignment of error, Appellant argues the trial court erred in finding exigent circumstances existed which justified her blood to be drawn absent a search warrant. We disagree.

**{¶18}** We note if there are exigent circumstances and "an officer has probable cause to arrest a driver for OVI, the result of an analysis of a blood sample taken over the driver's objection and without consent is admissible in evidence, even if no warrant had been obtained." *State v. Hoover,* 123 Ohio St.3d 418, 2009–Ohio–4993, 916 N.E.2d 1056, ¶ 19, citing *Schmerber v. California,* 384 U.S. 757, 770–771, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).

*Probable Cause*

**{¶19}** For ease of discussion, we address the question of probable cause first.

**{¶20}** A police officer has probable cause for an arrest if the facts and circumstances within his knowledge are sufficient to cause a reasonably prudent person to believe that the defendant has committed the offense. *State v. Cummings,* 5th Dist.No.2005–CA–00295, 2006–Ohio–2431, ¶ 15, citing *State v. Heston,* 29 Ohio St.2d 152, 280 N.E.2d 376 (1972). In making this determination, the trial court must examine the totality of facts and circumstances surrounding the arrest. See *State v. Miller,* 117 Ohio App.3d 750, 761, 691 N.E.2d 703 (1997); *State v. Brandenburg,* 41 Ohio App.3d

109, 111, 534 N.E.2d 906 (2nd Dist.1987). When evaluating probable cause to arrest for OVI, the totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered. See *State v. Homan,* 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (2000). Furthermore, a police officer does not have to observe poor driving performance in order to effect an arrest for driving under the influence of alcohol if all the facts and circumstances lead to the conclusion that the driver was impaired. See *State v. Harrop,* 5th Dist. No. CT2000–0026 (July 2, 2001), citing *Atwell v. State,* 35 Ohio App.2d 221, 301 N.E.2d 709 (8th Dist.1973).

**{¶21}** We find Officer Lewis had probable cause to suspect Appellant was under the influence of alcohol after his initial investigation of the accident. Officer Lewis observed the conditions and locations of the vehicles and determined Appellant was at fault. When Officer Lewis made contact with Appellant, he detected an odor of alcohol emanating from Appellant's vehicle. Further, eyewitnesses to the accident informed Officer Lewis Appellant was traveling at a high rate of speed when she drove through the red light and struck Ehlerman's pickup truck.

*Exigent Circumstances*

**{¶22}** Turning to the question of exigent circumstances, we find the potential for alcohol to dissipate within a suspect's blood system constitutes exigent circumstances. *State v. Anderson,* 5th Dist. No. 00CAA12039, 2001 WL 967900, appeal not allowed, 94 Ohio St.3d 1410, 759 N.E.2d 787. "It is beyond cavil that alcohol in an individual's system progressively dissipates over a short period of time." *Willoughby v. Dunham,* 11th Dist.

No.2010–L–068, 2011–Ohio–2586, ¶ 37; *Schmerber* at 770 ("the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system"). Exigent circumstances have been found to justify ordering a blood sample without consent when a defendant was in an accident approximately two hours prior to the blood draw and "there was a risk that evidence would be destroyed as appellant's system began to eliminate the alcohol." *State v. Schulte,* 11th Dist. No. 94–L–186, 1996 WL 660880, *8, appeal not allowed, 78 Ohio St.3d 1428, 676 N.E.2d 533 (1997); *Schmerber* at 770–771 (in cases where the defendant had to be taken to a hospital and police had to investigate the scene of the accident, time is limited to secure a warrant and exigent circumstances exist).

**{¶23}** We find exigent circumstances existed which justified the warrantless draw of Appellant's blood. The accident occurred at approximately 1:30 a.m. on May 8, 2016. After his initial contact with Appellant, Officer Lewis was unable to investigate further due to Appellant's condition. Emergency medical personnel at the scene assumed care of Appellant, who was transported to Ohio State University Medical Center in Columbus. Officer Lewis then assisted with the accident investigation. When Officer Lewis arrived at the hospital at 3:00 a.m., Appellant was in triage. Appellant was not conscious; therefore, the officer was unable to obtain her consent for the blood draw. Although Officer Lewis contemplated requesting a search warrant, he determined he would not be able to obtain the warrant and complete the blood draw within the statutory three-hour window following the accident. Officer Lewis was unfamiliar with the procedures for obtaining an after-hours warrant in Columbus, and believed the evidence of Appellant's

intoxication would be compromised if he pursued a search warrant rather than proceed with a warrantless blood draw.

**{¶24}** Based upon the foregoing, we find the trial court's findings of fact to be supported by competent, credible evidence. We further find the trial court did not err in overruling Appellant's motion to suppress.

**{¶25}** Appellant's first assignment of error is overruled.

II

**{¶26}** In her second assignment of error, Appellant challenges her convictions as against the manifest weight of the evidence. Specifically, Appellant contends the state failed to establish her intoxication was the proximate cause of Ehlerman's death. Appellant maintains the evidence showed Ehlerman's death was the result of her speeding and running the red light, but the state failed to prove her intoxication led to her speeding or running the red light. Appellant submits the testimony revealed she was attempting to get away from Bell, whom she viewed as being a dangerous predator.

**{¶27}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997–Ohio–52, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

**{¶28}** The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d

904 (2001); *State v. Murphy,* 4th Dist. Ross No. 07CA2953, 2008-Ohio-1744, 2008 WL 1061793, ¶ 31. "Because the trier of fact sees and hears the witnesses and is particularly competent to decide 'whether, and to what extent, to credit the testimony of particular witnesses,' we must afford substantial deference to its determinations of credibility." *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 20 (Citations omitted.) Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact-finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer,* 4th Dist. Pickaway No. 11CA9, 2012-Ohio-1282, 2012 WL 1029466, ¶ 24; *accord State v. Howard,* 4th Dist. Ross No. 07CA2948, 2007-Ohio-6331, 2007 WL 4201355, ¶ 6 ("We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and weight.").

{¶29} Appellant was convicted of aggravated vehicular homicide, in violation of R.C. 2903.06(A)(1)(a), which provides:

> (A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause the death of another or the unlawful termination of another's pregnancy in any of the following ways:
>
> (1)(a) As the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance.

**{¶30}** The evidence presented at trial established Appellant was at Hooligan's Bar, a drinking establishment, during the late evening hours of May 7, 2016/early morning hours of May 8, 2016. Zachary Bell testified he tried to give Appellant a ride home, however, after approximately 30-45 minutes, Bell returned to Hooligan's because Appellant either would not or could not give him directions to her home. Appellant was still visibly intoxicated when she left Hooligan's for the second time, entered her Lexus, and drove away. Bell testified he tried to catch up to her in his vehicle, but Appellant was driving at a high rate of speed and he ended his pursuit.

**{¶31}** Eyewitnesses at the scene of the accident stated Appellant was traveling well above the posted speed limit and drove through a red light immediately before striking Ehlerman's pickup truck. An analysis of the airbag control module in Appellant's vehicle revealed Appellant was driving over 70 mph at the time of the accident. In addition, Appellant's blood alcohol content was .210. Drs. Steven Steinberg and John Daniels testified Ehlerman died of the injuries on May 9, 2016, and the cause of his death was blunt force injuries to his head as a result of the motor vehicle collision.

**{¶32}** The jury was free to accept or reject any or all of the evidence offered by the parties and assess the witnesses' credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State* v. *McGregor,* 5th Dist. Ashland No. 15–COA–023, 2016–Ohio–3082, ¶ 10, citing *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 2000 WL 297252 (Mar. 23, 2000). Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *id.* Our review of the entire record reveals no significant

inconsistencies or other conflicts in the state's evidence which would demonstrate a lack of credibility of the state's witnesses.

**{¶33}** Upon review of the entire record, we do not find the jury clearly lost its way in determining Appellant committed a violation of R.C. 4511.19(A), and as a result said violation was a proximate cause of Ehlerman's death.

**{¶34}** Appellant's second assignment of error is overruled.

III

**{¶35}** In her final assignment of error, Appellant contends her convictions were not based upon sufficient evidence and the trial court erred in denying her Crim. R 29 motion for acquittal.

**{¶36}** Criminal Rule 29(A) provides a court must order the entry of a judgment of acquittal on a charged offense if the evidence is insufficient to sustain a conviction on the offense. Crim.R. 29(A). However, "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman,* 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus. Thus, a motion for acquittal tests the sufficiency of the evidence. *State v. Tatum,* 3d Dist. Seneca No. 13-10-18, 2011-Ohio-3005, 2011 WL 2448972, ¶ 43, citing *State v. Miley,* 114 Ohio App.3d 738, 742, 684 N.E.2d 102 (4th Dist. 1996).

**{¶37}** When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Monroe,* 105 Ohio St.3d 384, 2005-Ohio-2282, 827

N.E.2d 285, ¶ 47. Sufficiency is a test of adequacy. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Accordingly, the question of whether the offered evidence is sufficient to sustain a verdict is a question of law. *State v. Perkins,* 3d Dist. Hancock No. 5-13-01, 2014-Ohio-752, 2014 WL 855870, ¶ 30, citing *Thompkins* at 386, 678 N.E.2d 541.

{¶38} As set forth in our analysis of Appellant's second assignment of error, the evidence presented at trial established Appellant was at Hooligan's Bar during the late evening hours of May 7, 2016/early morning hours of May 8, 2016. Zachary Bell tried to give Appellant a ride home, however, after approximately 30-45 minutes, Bell returned to Hooligan's because Appellant either would not or could not give him directions to her home. Appellant was still visibly intoxicated when she left Hooligan's for the second time, entered her Lexus, and drove away. Bell testified he tried to catch up to her in his vehicle, but Appellant was driving at a high rate of speed and he ended his pursuit.

{¶39} Eyewitnesses at the scene of the accident stated Appellant was traveling well above the posted speed limit and drove through a red light immediately before striking Ehlerman's pickup truck. An analysis of the airbag control module in Appellant' vehicle revealed Appellant was driving over 70 mph at the time of the accident. In addition, Appellant's blood alcohol content was .210. Drs. Steven Steinberg and John Daniels testified Ehlerman died of the injuries on May 9, 2016, and the cause of his death was blunt force injuries to his head as a result of the motor vehicle collision.

{¶40} We find based upon the evidence presented by the state, the trial court did not err in denying Appellant's Criminal Rule 29 motion for acquittal.

**{¶41}** The judgment of the Licking County Court of Common Pleas is affirmed.


By: Hoffman, J.

Wise, John, P.J.  and

Baldwin, J. concur